# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

SUZANNE MARTIN,         )   CASE NO. 5:18-cv-924
                              )
     Plaintiff,        )
                              )
         v.            )   MAGISTRATE JUDGE DAVID A. RUIZ
                              )
NANCY A. BERRYHILL,     )
   *Acting Comm'r of Soc. Sec.*,   )   **MEMORANDUM OPINION AND ORDER**
                              )
     Defendant.      )

Plaintiff, Suzanne Martin (hereinafter "Plaintiff"), challenges the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter "Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to consent of the parties. (R. 11). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I. Procedural History

On January 15, 2015, Plaintiff filed her application for SSI, alleging a disability onset

date of November 1, 2002. (Transcript ("Tr.") 216-218). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 111-176). Plaintiff participated in the hearing on April 11, 2017, was represented by counsel, and testified. (Tr. 33-83). A vocational expert ("VE") also participated and testified. *Id*. On May 11, 2017, the ALJ found Plaintiff not disabled. (Tr. 25). On March 8, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-7). On April 23, 2018, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 12 & 14).

Plaintiff asserts the following assignments of error: (1) the ALJ erred in failing to account for the effects of migraine headaches when determining the RFC, and (2) the ALJ's consideration of the medical opinions of record failed to comport with State Agency policy and Sixth Circuit precedent. (R. 12).

## II. Evidence

### A. Relevant Medical Evidence[1]

#### 1. Treatment Records

On December 14, 2012, Jeffrey C. Lamkin, M.D., saw Plaintiff following a two-year absence since she did not appear for an appointment in 2010. (Tr. 588-589). Plaintiff thought her vision was "terrible" and complained of debilitating migraines. *Id*. Her vision with correction was 20/30. *Id*. Dr. Lamkin recommended visual fields testing, given Plaintiff's headaches and

---

[1]  The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the over 1,200 page record cited by the parties in their briefs *and* deemed relevant by the court to the assignments of error raised.

the possibility of pseudotumor cerebri. (Tr. 589).

On December 21, 2012, Dr. Lamkin referred Plaintiff for additional evaluation and indicated her visual fields show severe constriction. (Tr. 587).

On January 9, 2013, Clayton Seiple, D.O., examined Plaintiff. She was 5'3" tall and weighed 228 pounds with a Body Mass Index ("BMI") of 40.38. (Tr. 699-701). She appeared to be in moderate pain. (Tr. 700). Dr. Seiple assessed fibromyalgia, other chronic pain, anxiety unspecified, headaches, allergic rhinitis, and insomnia. *Id*. On February 6, 2013, Dr. Seiple again assessed fibromyalgia, anxiety, and headaches. (Tr. 697). Plaintiff reported memory loss, headaches, and blurred vision. (Tr. 696).

On March 26, 2013, LeRoy LeFever, D.O., saw Plaintiff and assessed hyperlipidemia, diabetes mellitus, lower back pain, and fibromyalgia. (Tr. 694). On examination, Plaintiff was in no acute distress, had no swelling or deformity, and no loss of sensation. *Id*.

On April 23, 2013, Plaintiff presented to Dr. LeFever reporting photophobia, phonophobia and a bilateral frontal pounding headache. (Tr. 689) On examination, Plaintiff was in no acute distress, was grossly intact neurologically, had an antalgic gait and walked with a cane, and had 5/5 motor strength in her upper and lower extremities. (Tr. 690). Dr. LeFever assessed migraines, diabetes mellitus uncontrolled, fibromyalgia, anxiety, hypertension, hypercholesterolemia, vertigo, and neuropathy. *Id*. Dr. LeFever administered a Toradol injection for migraine relief. *Id*.

On May 15, 2013, Dr. LeFever assessed diabetes mellitus uncontrolled and migraines. (Tr. 687). He believed Plaintiff's migraines had been caused by analgesia overuse, but noted that Plaintiff's neurologist believed the headaches were the result of diabetes. *Id*.

On October 25, 2013, Dr. LeFever assessed diabetes mellitus uncontrolled, fibromyalgia,

obesity, anxiety, hyperlipidemia, and lumbago, but omitted migraines, headaches, and vertigo. (Tr. 677).

On November 30, 2013, Plaintiff presented to the Emergency Room with a two-day headache that she described as 10/10 in pain level. (Tr. 1107). She was diagnosed with a migraine headache and discharged after receiving medications. (Tr. 1108). On December 4, 2013, after a return trip to the ER with similar complaints, she was instructed to see her neurologist within a week. (Tr. 1099).

On June 4, 2014, Plaintiff saw Rachel Espiritu, M.D., who assessed diabetes mellitus uncontrolled, diabetic neuropathy, hyperlipidemia, hypertension, migraines, fibromyalgia, and obesity. (Tr. 344). Dr. Espiritu emphasized the importance of dietary changes. (Tr. 344). On examination, her BMI was 39.92, she was in no acute distress, had decreased motor strength in the lower left extremity, and used a cane for ambulation. (Tr. 346).

On July 3, 2014, Dr. Espiritu observed decreased left lower extremity motor strength on examination. (Tr. 349-350).

On July 15, 2014, Plaintiff went to the ER with a migraine, reporting a history of chronic migraines, that she was suffering from a week-long migraine, and that her pain intensity was 10/10. (Tr. 1018). She endorsed both light and sound sensitivity. *Id*. She reported taking Topamax daily, and also trying Tylenol and Ibuprofen. *Id*. Plaintiff was given "a headache cocktail consisting of IV fluids, Zofran, Benadryl," which reduced her pain to 7/10, and subsequent doses of Dilaudid reduced it to 6/10. (Tr. 1020). Her pain returned, and Plaintiff was admitted for further management. *Id*. The provider's impression was intractable headache, migraines, fibromyalgia, hypertension, neuropathy, insulin resistant diabetes mellitus, asthma, anxiety/depression and hyperlipidemia. (Tr. 1032).

On July 16, 2014, sensory exam showed decreased sensation to pinprick bilaterally in the legs up to the upper shins and a slight decrease of pinprick sensation over distal finger tips on the right. (Tr. 888). Sensation to light touch was intact bilaterally, musculoskeletal bulk and tone were normal, strength was 5/5 and symmetric bilaterally in the upper extremities and 4+/5 in the bilateral hip flexor muscles, 5/5 in knee flexion and extension, 5/5/ dorsiflexion on the right and 4+/5 on the left, plantar flexion was 5/5 bilaterally, reflexes were 2+, and an antalgic gait with use of a cane. *Id*. Plaintiff's symptoms were noted as consistent with acute exacerbation of migraine, prior history of migraine headaches, and intermittent exacerbations, which "may have been precipitated by her running out of her topiramate medication at home." *Id*.

On November 14, 2014, Dr. Espiritu noted that Plaintiff had stopped taking Topamax after she ran out, that Plaintiff "works somewhat," and that Plaintiff could not say how often she gets headaches. (Tr. 321).

On November 18, 2014, Dr. LeFever assessed sinusitis and fibromyalgia. (Tr. 390). He noted Plaintiff recently saw a neurologist who increased her Topamax prescription. *Id*.

On March 11, 2015, Plaintiff reported that her headaches were getting better, and that she still wakes up to them, but that they only lasted "a little bit and then go away." (Tr. 881).

On July 8, 2016, Plaintiff reported taking Topamax for three years for migraine treatment and experiencing migraines three to four times per month sometimes lasting several days in duration. (Tr. 879). She was diagnosed with chronic migraines and continued on Topamax 150 mg as needed and over the counter medications as necessary for breakthrough symptoms. *Id*.

On July 12, 2016, Dr. LeFever assessed fibromyalgia, chronic pain syndrome, basilar migraines, and mild but persistent asthma. (Tr. 624). On examination, Plaintiff demonstrated lumbar tenderness. (Tr. 625).

On January 17, 2017, Plaintiff informed a nurse practitioner that her migraines were "still about the same." (Tr. 878).

### b. Mental Impairments

On November 21, 2011, Plaintiff saw Abra Morgan, PC, who noted on mental status examination that Plaintiff was positive for stuttering and flat affect. (Tr. 421-425).

On January 27, 2015, Plaintiff saw Sarah Robinson, LISW, and discussed issues related to chronic pain/medical issues. (Tr. 428).

On March 9, 2015, Plaintiff reported to social worker Robinson that she would get overwhelmed in public. (Tr. 425). Ms. Robinson wanted Plaintiff to leave her house more. *Id*.

On March 24, 2015, Plaintiff was seen by Heather Lewis, D.O. (Tr. 527-532). On mental status examination, Plaintiff had an anxious and depressed mood, constricted affect, tangential thought process, and "limited-fair" insight/judgment. (Tr. 528-529). Dr. Lewis diagnosed PTSD, recurrent depressive disorder, and generalized anxiety disorder. (Tr. 529).

On June 2, 2015, Dr. Lewis noted little change on mental status examination. (Tr. 603-604).

On November 10, 2015, Plaintiff reported suffering four "anxiety attacks" after leaving the house during the previous weeks. (Tr. 941).

### 2. Medical and non-Medial Opinions Concerning Plaintiff's Functional Limitations

On January 24, 2017, Dr. Lewis completed a one-page mental status evaluation form indicating that Plaintiff suffered from depression, anxiety, and PTSD resulting in the following symptoms: low motivation, low energy, difficulty concentrating and thinking, depressed mood, sleep disturbance, anxiety, panic attacks and anhedonia. (Tr. 615). Dr. Lewis circled answers indicating that Plaintiff often has difficulty maintaining activities of daily living, including

keeping up with household chores and daily hygiene, and maintaining concentration; and, occasionally has difficulty managing even a low stress situation, and carrying out simple, routine and repetitive tasks. *Id*. Dr. Lewis circled an answer indicating Plaintiff experiences approximately "4+ bad days per month during which [her] symptoms are increased and [she] would not be able to complete an 8 hour work shift." *Id*.

On March 17, 2017, Dr. Friedman completed a checklist-style physical capacity questionnaire indicating that Plaintiff suffered from neuropathy, migraines, and status-post stroke. (Tr. 1200). Therein, Dr. Friedman checked boxes indicating that, on most days, Plaintiff could stand/walk 15 to 30 minutes at a time followed by a 15+ minute rest period. *Id*. Similarly, he opined Plaintiff could sit for 15 to 30 minutes at a time followed by a 15+ minute period of standing and moving about. *Id*. Dr. Friedman did not express an opinion as to how long Plaintiff could perform these activities in an 8-hour workday. *Id*. Plaintiff could repeatedly lift 0-5 pounds. *Id*. Dr. Friedman indicated Plaintiff's migraines are predictable, occur 7+ days per month, and last 7+ hours. *Id*. Stress increased the severity and frequency of her migraines. *Id*. Plaintiff's ability to concentrate and to remain on task decreases during and after a migraine. (Tr. 1201). Her migraines were accompanied by nausea, fatigue and light and sound sensitivity. *Id*. She often experienced difficulty maintaining concentration, persistence and pace for even simple tasks; and often required additional breaks outside of standard breaks. *Id*. Dr. Friedman circled an answer indicating Plaintiff experiences approximately "4+ bad days per month during which [her] symptoms are increased and [she] would not be able to complete an 8 hour work shift." *Id*.

On March 20, 2017, social worker Goeder completed a one-page mental status evaluation form indicating that Plaintiff suffered from depression, anxiety, and PTSD resulting in the

following symptoms: low motivation, low energy, difficulty concentrating/thinking, depressed mood, sleep disturbance, anxiety, worry, panic attacks and anhedonia. (Tr. 1203). Ms. Goeder circled answers indicating that Plaintiff often has difficulty maintaining activities of daily living, including keeping up with household chores and personal hygiene, and maintaining concentration; and, occasionally has difficulty managing even a low stress situation, and carrying out simple, routine and repetitive tasks. *Id*. Ms. Goeder circled an answer indicating Plaintiff experiences approximately "4+ bad days per month during which [her] symptoms are increased and [she] would not be able to complete an 8 hour work shift." *Id*.

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental

ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not

performing substantial gainful activity, has a severe impairment (or combination of impairments)

that is expected to last for at least twelve months, and the impairment(s) meets a listed

impairment, the claimant is presumed to be disabled regardless of age, education or work

experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s)

does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§

404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's

impairment(s) does prevent her from doing past relevant work, if other work exists in the

national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§

404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since January 8, 2015, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: peripheral neuropathy, insulin-dependent diabetes mellitus, dysfunction of the joints, hypertension, migraines, fibromyalgia, morbid obesity, asthma, anxiety disorder, depression, posttraumatic stress disorder (PTSD), and borderline intellectual functioning (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she can occasionally push and pull with the bilateral lower extremities; she can never climb ladders, ropes, and scaffolds, and can occasionally climb ramps and stairs; the claimant can occasionally balance, kneel, crouch, and crawl, and can frequently stoop; she requires the use of a cane for walking on uneven terrain or prolonged ambulation; she can have occasional exposure to pulmonary irritants such as fumes, dust, gases, odors, and poor

ventilation; the claimant must avoid commercial driving and unprotected heights; she is unable to use a telephone to communicate; the claimant can perform simple, routine, and repetitive tasks; the work environment must be free of fast pace production requirements and should involve only simple work-related decisions and routine workplace changes; and the claimant can have occasional, superficial interaction with the public and co-workers, with superficial defined as no negotiation, or confrontation with others.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on *** and was 32 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 C.F.R. § 416.964).

8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since January 8, 2015, the date the application was filed (20 C.F.R. § 416.920(g)).

(Tr. 15-24).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court

does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

## B. Plaintiff's Assignments of Error[2]

### 1. Treating Source Opinions

In the second assignment of error, Plaintiff asserts the ALJ erred by failing to give good reasons for rejecting the opinions of several of her treating sources. (R. 12, PageID# 1267-1274). Specifically, Plaintiff argues that the ALJ did not appropriately consider the opinions from Dr. Lewis, Dr. Friedman, and Ms. Goeder, who all opined that Plaintiff would miss approximately four days per month due to her various medical conditions.[3] The Commissioner disagrees, arguing the ALJ presented a number of good reasons for discounting the opinions from Dr. Friedman, Dr. Lewis, and Ms. Goeder. (R. 14, PageID# 1291-1298).

"Provided that they are based on sufficient medical data, 'the medical opinions and

---

[2] The court addresses Plaintiff's arguments in reverse order, as the first assignment of error appears to be predicated to an extent on the second.

[3] At the hearing, the VE testified that an individual who was absent at a rate of about one day or less a month, averaged over a twelve-month period, would remain competitively employable. (Tr. 75).

diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give good reasons for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v. Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (Polster, J.)

It is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb

to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). If fully explained with appropriate citations to the record, a good reason for discounting a treating physician's opinion is a finding that it is "unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints).

    First, the ALJ addressed Dr. Lewis, Ms. Goeder, and Dr. Friedman's opinions as follows:

> No controlling weight is given to the treating source opinions of Dr. Lewis and Ms. Stephanie Goeder from Coleman Behavioral (Exhibit B14F; B22F; B23). Dr. Lewis determined that the claimant often has problems with activities of daily living and maintaining attention, she has occasional difficulty with managing even a low stress situation and carrying out simple tasks, and she would have four or more bad days per month with increased symptoms in which she could not complete an 8-hour workday. Ms. Goeder completed the same form as Dr. Lewis, with very similar limitations, such as often having difficulty with activities of daily living and maintaining attention, and experiencing four or more bad days per month in which she could not work. The opinion that the claimant is unable to work for several days per month is a determination that is reserved for the Commissioner, and this is not a specific statement of functional abilities (20 CFR 404.1527(e), 416.927(e), and SSR 96-5p). Furthermore, these opinions are inconsistent with the medical record, including the claimant's positive response to her psychiatric medications without evidence of psychiatric hospitalization, and her mostly mild reported symptoms to treating sources at Coleman Behavioral, without evidence of hallucinations, delusions, obsessions, compulsions, cognitive disorder, current suicidal/homicidal ideation, or other serious issues (Exhibit B7F; B9F; B13F; B18F). In addition, Dr. Lewis and Ms. Goeder provided very little

supporting evidence for their extreme limitations, aside from largely restating the claimant's diagnoses and circling possible subjective symptoms. Finally, Ms. Goeder is not a psychologist or psychiatrist, and she is therefore not an acceptable medical source to opine on the claimant's mental functioning or abilities. Therefore, the undersigned gives little weight to these opinions.

***

No controlling weight is given to the treating source opinion of Dr. Freidman (Exhibit B21F). Dr. Freidman limited the claimant to much less than sedentary level work due to migraines and neuropathy, such as lifting only up to 5 pounds, standing walking for 15 to 30 minutes at a time, with the need for a 15 minute rest period, having migraines 7 days per week that last 7 hours at a time, the need to lie down in the dark for 30 minutes after a migraine, often having difficulty maintaining concentration and attention due to migraines, and experiencing four or more days per month in which she could not work for 8 hours. As noted above, the opinion that the claimant cannot work for several days per month, thus being unable to sustain competitive employment, is reserved for the Commissioner. In addition, these opinions are inconsistent with the medical record as a whole, including the claimant's mostly unremarkable neurological findings, and her ability to raise three children, cook, clean, and engage in other activities of daily living in spite of her claims of debilitating headaches (Exhibit B20F, pg. 32; hearing testimony). Finally, Dr. Freidman provided very little supporting evidence or explanation for these extreme limitations, aside from only restating the claimant's diagnoses, and many of his limitations are based on the claimant's subjective allegations of headaches, which are not fully consistent with the record for the reasons listed above. Therefore, the undersigned gives little weight to this opinion.

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). Plaintiff acknowledges that opinions by medical providers that an individual is disabled or unable to work is not a "medical opinion" as it is an issue reserved for the Commissioner and, therefore, an ALJ need "not give any special significance to the source of an opinion on issues reserved to the Commissioner." 20 C.F.R. § 416.927(d); R. 12, PageID# 1271.

The question presented here is whether an opinion from a medical source that an individual would miss four days of work is tantamount to an unacceptable medical opinion concerning disability and, therefore, not entitled to any special weight regardless of the source of the opinion. The ALJ's decision plainly represents the view that it does not. Without much discussion, the Commissioner's brief accepts that position. (R. 14, PageID# 1294). Plaintiff, however, asserts that the opinions regarding absenteeism are "not limited to making a simplistic statement regarding whether Plaintiff is able to work." (R. 12, PageID# 1271). Despite the centrality of this issue, neither side adequately briefs the issue with appropriate citations to case law. There is some authority supporting the Commissioner's position, though the matter does not appear to have been squarely addressed by binding authority.[4] The court, however, need not decide this issue as the ALJ's belief that the opinions in question were reserved for the Commissioner was not the sole basis for her rejection of the disputed opinions.

Unless a treating source's opinion is given controlling weight, the ALJ is required to consider the following factors in deciding the weight to give any medical opinion: the length of

---

[4] "Arguably, this per-se disabling opinion going to the ultimate issue of disability was not a genuine medical opinion but rather a 'medical source opinion[] on issues reserved to the Commissioner' as contemplated by 20 C.F.R. § 404.1527(d)." *Cocke v. Colvin*, 2014 U.S. Dist. LEXIS 24925, *2-3 n.1 (W.D. Ky. Feb. 27, 2014) ("Such opinions are entitled to no 'special significance.'"); *Compare Saulic v. Commissioner*, 2013 U.S. Dist. LEXIS 131960, 2013 WL 5234243 (N.D. Ohio) (the doctor "did not 'know,' in the sense of an objective medical fact, that, if properly motivated, the plaintiff ... would require absences in excess of 4 days per month") and *Sharp v. Commissioner*, 152 Fed. Appx. 503, 2005 WL 2811812 (6th Cir. 2005) (although the treating physician's opinion regarding absenteeims "come[s] close to stating an ultimate opinion about the existence of a disability," in this case, it "came at the end of extensive treatment" and was not based upon uncritical acceptance of the patient's subjective complaints). *See also Chhay v. Colvin*, No. 1:13-CV-02229, 2014 WL 4662024, at *6 (N.D. Ohio Sept. 17, 2014) ("Turning to Dr. Dasari's opinion that Chhay would miss four or more days of work per month, the Court is skeptical whether such an opinion truly constitutes a 'medical opinion' under the facts and circumstances of this case [because] Dr. Dasari's assessment fails to explain in any meaningful manner why Chhay would miss so many days of work.")

the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the source. 20 C.F.R. § 404.1527(c); *see generally Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 375 (6th Cir. 2013); *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011). While the ALJ is directed to consider such factors, the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in her decision. *See Francis v. Commissioner*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011).

Plaintiff's argument—that the ALJ considered the three opinions in isolation rather than noting that the three opinions are consistent with one another as to the projected rate of absenteeism—is unavailing. While the "consistency" factor may be critical in certain cases, the ALJ clearly found all three opinions similarly deficient as explained below. Plaintiff cites no authority suggesting the failure to mention the consistency of the opinions with each other provides a basis for a remand. Moreover, it is apparent the ALJ did not ignore the consistency factor, as the decision explained that the opinions in question were "inconsistent with the medical record as a whole." (Tr. 22, 23).

Further, all three medical source opinions, as noted above, are contained in checklist questionnaires devoid of any explanation for the functional limitations assessed therein other than noting diagnoses.[5] (Tr. 615, 1200-1203). The inclusion of a diagnosis alone, however, does

---

[5] The mental status forms are actually a variation of the checklist or checkbox format, as it asks the medical provider to simply circle the patient's symptoms from a preselected list and to circle the level of Plaintiff's limitations as occurring "often," "occasionally," or "never," none of which are defined in the form. (Tr. 615, 1200-1203). Furthermore, none of the questionnaires provide spaces for the medical providers to include any form of explanation and even the patient's primary diagnoses appear to have been pretyped rather than completed by the medical provider. *Id.* However, those diagnoses do accurately reflect the record and ultimately were designated as severe impairments by the ALJ.

not save a patently deficient medical source opinion. *See, e.g.*, *Toll v. Commissioner*, No. 1:16CV705, 2017 WL 1017821 at *4 (W.D. Mich. Mar. 16, 2017) ("even if the ALJ failed to provide good reasons" for assigning little weight to a treating source's opinion, such error was harmless where the opinion consisted of a check-box worksheet lacking any explanation beyond a diagnosis).

In this case, the ALJ found that all three opinions were similarly deficient, taking explicit notice of the lack of explanation accompanying all of the opinions. The Commissioner argues that the checklist-style opinions may be properly discounted due to their lack of any detailed explanation. (R. 14, PageID# 1294). The ALJ observed that the questionnaires provided "very little supporting evidence" or little "explanation" for the extreme limitations assessed. (Tr. 22-23). In other words, the ALJ found there was a lack of supportability. As stated above, "[s]upportability" is one of the factors specifically set forth in the regulations used to evaluate opinion evidence, and states that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 416.927(c)(3).[6]

---

[6] Given the complete lack of any meaningful explanation in the questionnaires completed by Dr. Lewis, Dr. Friedman, and Ms. Goeder, the opinions are arguably patently deficient and not subject to the rigors of the treating physician rule. The Sixth Circuit and numerous district courts have found that failure to give good reasons for rejecting a check-box/checklist opinion, which is unaccompanied by any explanation, is harmless error. *Hernandez v. Commissioner*, 644 Fed. App'x 468, 474 (6th Cir. Mar. 17, 2016) (finding that such evidence was "'weak evidence' at best' and meets our patently deficient standard") (citations omitted); *accord Shepard v. Commissioner*, 705 Fed. App'x 435 (6th Cir. Sept. 26, 2017); *Denham v. Commissioner*, No. 2:15CV2425, 2016 WL 4500713, at *3 (S.D. Ohio Aug. 29, 2016) (magistrate judge "correctly found that any error in the ALJ's consideration of Lewis' evaluation was harmless because the check-box form was so patently deficient that the Commissioner could not possibly credit it"). Because the court finds that the ALJ gave sufficiently good reasons for not adopting the

The ALJ's discussion concerning the supportability factors, along with the inconsistency of the opinions with the treatment records, satisfied the treating physician rule. *See generally Crum v. Commissioner*, No. 15-3244, 2016 WL 4578357, at *7 (6th Cir. Sept. 2, 2016) (suffices that ALJ listed inconsistent treatment records elsewhere in the opinion); *Hernandez v. Commissioner*, No. 15-1875, 2016 WL 1055828, at *4 (6th Cir. Mar. 17, 2016). The decision renders it apparent that the ALJ considered the proper factors in determining how much weight to ascribe to Dr. Lewis's and Dr. Friedman's opinions even though the decision does not explicitly discuss each factor. *See Francis*, 2011 WL 915719, at *3 (the regulations require only consideration of the factors, and does not require an the ALJ to articulate "an exhaustive factor-by-factor analysis"); *Gayheart*, 710 F.3d at 376.

To the extent Plaintiff argues that the treatment notes were not inconsistent with the medical providers' opinions, such an argument essentially invites the court to compare the unexplained opinions of the medical providers and offer its own assessment as to their consistency with the opinions expressed. Such an invitation must be rejected as courts "may not reweigh conflicting evidence on appeal, but instead must affirm" if a decision is supported by substantial evidence. *Haun v. Comm'r of Soc. Sec.*, 107 Fed. App'x 462, 465 (6th Cir. 2004); *see also Steed v. Colvin*, 2016 U.S. Dist. LEXIS 114027 (N. D. Ohio, Aug. 25, 2016) (McHargh, M.J.) ("While [the plaintiff] may disagree with the ALJ's explanation or her interpretation of the evidence of record, her disagreement with the ALJ's rationale does not provide a basis for remand."); *Kiser v. Colvin*, No. CV 14-170, 2016 WL 527942, at *3 (E.D. Ky. Feb. 8, 2016) ("To the extent that Plaintiff suggests that … evidence is open to another interpretation that

---

providers' opinion, the court need not further consider whether the checklist opinions are so patently deficient that a violation of the treating physician rule would be deemed harmless error.

favors his claim, the Court declines to reweigh the evidence in this fashion."); *Whetsel v. Comm'r of Soc. Sec.*, No. 2:15-CV-3015, 2017 WL 443499, at *8 (S.D. Ohio Feb. 2, 2017) ("[I]t is not this Court's job to reweigh the evidence, but only to determine if the ALJ has evaluated it in a reasonable fashion."), *report and recommendation adopted*, No. 2:15-CV-3015, 2017 WL 1034583 (S.D. Ohio Mar. 16, 2017).

Finally, with respect to Ms. Goeder, the court agrees with the ALJ that she does not constitute an "acceptable medical source" under the regulations and, therefore, her opinion is not subject to the rigors of the treating physician rule.[7] Nevertheless, the decision sufficiently explained why the opinion was ascribed little weight.

Therefore, Plaintiff's second assignment of error is without merit.

**2. Migraines**

In the first assignment of error, Plaintiff raises two arguments with respect to her migraine headaches. First, Plaintiff suggests it was error for the ALJ not to consider whether her migraine headaches satisfied Listing 11.03. Second, Plaintiff argues the RFC failed to adequately account for her migraine-related functional limitations despite the ALJ designating her migraines

---

[7] According to social security regulations, a "social worker" is not considered an acceptable medical source but rather an "other source" or a "nonmedical source." 20 C.F.R. § 416.902(a) and 20 C.F.R. § 416.913. Pursuant to 20 C.F.R. § 416.927(f)(2), an ALJ should "generally explain the weight given to opinions" from medical sources who are not "acceptable medical sources" as defined in the regulations or opinions from "nonmedical sources." *See also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 838 (6th Cir. 2016) (observing that a "licensed clinical social worker" is not an "acceptable medical source," and, therefore, rejecting the contention that a social worker's opinion was owed deferential weight); *accord Racz v. Comm'r of Soc. Sec.*, No. 3:15-cv-74, 2016 WL 612536 at *10 (S.D. Ohio Feb. 16, 2016) (finding it was erroneous to categorize a social worker as a "treating source," as "licensed independent social workers are not 'acceptable medical sources'"); *see also Payne v. Comm'r of Soc. Sec.*, 402 Fed. App'x 109 (6th Cir. 2010) (finding the "ALJ did not err in failing to include any limitations noted by ... the case manager.... [as] social workers are not acceptable medical sources.")

as a severe impairment. (R. 12, PageID# 1263-1266). Each will be addressed in turn.

### a. Listing 11.03

While acknowledging that there is no listing that explicitly applies to migraine headaches, Plaintiff asserts that the ALJ erred by failing to consider the closest approximate listing, which Plaintiff posits is Listing 11.03 based on the Commissioner's own policies. (R. 12, PageID# 1264).

At Step Two, the ALJ found Plaintiff suffered from migraines. (Tr. 15). At Step Three, Plaintiff bears the burden of proving that her impairment meets or medically equals a particular listing. *See Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987). The Listings, located at Appendix 1 to Subpart P of the regulations, describe impairments considered "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). In other words, a claimant who meets or medically equals the requirements of a listed impairment will be deemed conclusively disabled. *See Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. App'x 411, 414 (6th Cir. 2011). "A claimant must satisfy all of the criteria to meet the listing," *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009), and all of these criteria must be met concurrently for a period of twelve continuous months. *See* 20 C.F.R. §§ 404.1525(c)(3)-(4), 416.925(c)(3)-(4); *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); *Blanton v. Soc. Sec. Admin.*, 118 Fed. App'x 3, 6 (6th Cir. 2004) ("When all the requirements for a listed impairment are not present, the Commissioner properly determines that the claimant does not meet the listing.")

Listing 11.03 addressed nonconvulsive epilepsy. The Commissioner asserts that the ALJ did not address Listing 11.03, because it was obsolete on the date she issued her decision. (R. 14, PageID# 1288). Specifically, the Commissioner asserts Listing 11.03 became obsolete on September 28, 2016. (*Id.*, *citing* Program Operations Management System (POMS) DI 34131.013, http://policy.ssa.gov/poms.nsf/lnx/0434131013). Indeed, by the time the 2017 edition of 20 C.F.R. Employees' Benefits Parts 400 to 499 (Revised as of April 1, 2017), Listing 11.03 had been eliminated. The hearing was held on April 11, 2017, and the ALJ did not issue her decision until May 11, 2017. Thus, the Listing 11.03 was no longer in existence by the time of either the hearing or the decision.

Plaintiff cites no authority suggesting that it is reversible error for an ALJ not to consider a listing that no longer exists, especially a listing that was not expressly addressed to the impairment in question.[8]

### b. Migraine or Headache-Related Limitations and the RFC

Finally, Plaintiff asserts that the ALJ erred by failing to include any limitations in the RFC related to her migraine headaches. (R. 12, PageID# 1265-1266). Plaintiff suggests that where an ALJ designates an impairment as severe, such as her migraine headaches, that "this must be accounted for by at least some concurrent limitation reasonably related to headaches in the RFC." (R. 12, PageID# 1266).

Plaintiff's argument is not well taken. First, the RFC limited Plaintiff to sedentary work

---

[8] The Commissioner's brief asserts that if the court were to find Listing 11.02 for Epilepsy the most analogous, Plaintiff cannot satisfy her burden of proving that *all* of the elements are satisfied. (R. 14, PageID# 1289-1291). The court declines to address a hypothetical argument not raised by Plaintiff. Nevertheless, without conducting an analysis, it is difficult to conceive how Plaintiff could credibly argue that she satisfies Listing 11.02, which requires an individual experience either generalized tonic-clonic seizures or dyscognitive seizures.

with only occasional pushing and pulling with the bilateral lower extremities; no climbing ladders, ropes, or scaffolds; occasional ability to climb ramps and stairs; occasional ability to balance, kneel, crouch, and crawl; frequent ability to stoop; the use of a cane for walking on uneven terrain or for prolonged ambulation; a number of environmental limitations and avoiding hazards; only simple, routine, and repetitive tasks; an environment free of fast pace production requirements; only simple work-related decisions and routine workplace changes; and only occasional, superficial interaction with the public and co-workers. (Tr. 19). Plaintiff provides the court with no basis for concluding that none of the many limitations imposed by the RFC were not at least in part necessitated by Plaintiff's migraine headaches.

Furthermore, "[a]t step two, the Commissioner must determine whether the claimant has a severe impairment." *Nejat v. Comm'r of Soc. Sec.*, 359 Fed. App'x 574, 576–77 (6th Cir. 2009) (observing that "[t]his circuit construes the step two severity regulation as a '*de minimis* hurdle,' intended to 'screen out totally groundless claims.'") (citations omitted). The Sixth Circuit explained that "if an impairment has 'more than a minimal effect' on the claimant's ability to do basic work activities, the ALJ must treat it as 'severe.'" *Id.* (*citing* Social Security Ruling (SSR) 96-3p, 1996 WL 374181 at * 1 (1996)). To the extent Plaintiff is arguing that the ALJ characterization of her migraines as "severe" at Step Two obligated the ALJ to include correspondingly significant or major limitations when formulating the RFC, such an argument contradicts the above cited Sixth Circuit law. In other words, simply because an impairment is deemed to have "more than a minimal effect" on the claimant's work-related abilities, it does not necessarily follow that those effects will necessarily be significant.

Plaintiff also argues that her testimony "plainly establishes additional work-related limitations not accounted for in the ALJ's RFC…." (R. 12, PageID# 1266). The ALJ, however,

explicitly found that Plaintiff's alleged symptoms and ensuing limitations "less than fully consistent with the evidence" and "not entirely consistent with the medical evidence and other evidence in the record…." (Tr. 21, 22). In other words, the ALJ did not find Plaintiff entirely credible. Plaintiff has not challenged the ALJ's credibility assessment, which is entitled to substantial deference.[9] Moreover, the ALJ was not obligated to incorporate into the RFC Plaintiff's self-reported limitations that she rejected.

Plaintiff also seems to assert that she would be off task an impermissible amount of time or miss more than one day of work per month due to her migraines. (R. 12, PageID# 1266). Again, to the extent these limitations are based on Plaintiff's own testimony, the ALJ was under no obligation to accept them. To the extent these limitations are based on the three medical provider opinions addressed above in the second assignment of error, the court has already determined that ALJ adequately explained the reasons for ascribing those opinions little weight. Therefore, no error can be gleaned from the ALJ's alleged failure to incorporate limitations that have been explicitly rejected. *See, e.g., White v. Comm'r of Soc. Sec.*, No. 3:13cv2106, 2014 WL 4983665 at *9 (N.D. Ohio Oct. 6, 2014) (finding that where the ALJ properly rejected a medical source's opinions, the ALJ was under no obligation to include the rejected limitations in the RFC

_____

[9] Plaintiff has not presented the court with a legal argument challenging the ALJ's credibility determination, and, therefore, has waived any issue regarding ALJ's credibility assessment. *See, e.g., Siple-Niehaus v. Comm'r of Soc. Sec.*, No. 5:15cv01167, 2016 WL 2868735, at n. 12 (N.D. Ohio, May 17, 2016) (finding that plaintiff "has not challenged the ALJ's credibility determination" and, therefore, "arguments pertaining to the ALJ's assessment of her credibility have been waived.") (Burke, M.J.); *cf. Williams v. Comm'r of Soc. Sec.*, No. 2:14cv2655, 2016 WL 2733518, at *2 (S.D. Ohio May 10, 2016) (declining to consider Plaintiff's argument challenging the ALJ's credibility determination, because it was not raised before the Magistrate Judge in the statement of errors). In addition, the court's role in a social security appeal is not to conduct a *de novo* review of the evidence, to make credibility determinations, or to reweigh the evidence; and therefore, it declines Plaintiff's invitation to deem her characterization of symptoms and limitations as fully credible. *Brainard*, 889 F.2d at 681.

or the hypothetical).

As such, Plaintiff's first assignment of error is without merit.

## VI. Conclusion

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: September 4, 2019